Donald J. JACKSON, Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD and Federal Aviation Administration, Respondents.

No. 96–1178.

United States Court of Appeals, District of Columbia Circuit.

Argued March 27, 1997.

Decided June 3, 1997.

Robert P. Silverberg, argued the cause, for petitioner. Barbara J. Stob, Washington, DC, was on brief.

Susan S. Caron, Attorney, Federal Aviation Administration, argued the cause for the respondents. Kathleen A. Yodice and Timothy P. Melcher, Attorneys, Federal Aviation Administration were on brief. Robert P. Vente, Counsel, Federal Aviation Administration entered an appearance.

Before GINSBURG, SENTELLE and HENDERSON, Circuit Judges.

KAREN LECRAFT HENDERSON, Circuit Judge:

Petitioner Donald J. Jackson seeks review of an order of the National Transportation Safety Board (NTSB or Board) affirming an oral decision and order of the Administrative Law Judge (ALJ) which in turn affirmed the finding of the Federal Aviation Administration (FAA) that Jackson violated two air safety regulations: 14 C.F.R. § 91.123(a), which prohibits a pilot in command from deviating from a transmitted clearance,[1] and 14 C.F.R. § 91.13(a), which prohibits any person from operating an aircraft "in a careless or reckless manner so as to endanger the life or property of another."[2] Jackson does not contest the facts underlying the violations: while pilot in command of a commercial aircraft he misinterpreted an Air Traffic Control (ATC) traffic advisory as a clearance instruction, causing his aircraft to ascend about 900 feet above its authorized clearance. Jackson contends, however, that he should not be charged with a violation because the controller failed to secure adequate confirmation from the aircraft that the message had been correctly received and because he reasonably relied on his first officer's identical misinterpretation of the transmission. In addition, he maintains that the FAA failed to establish an independent violation of 14 C.F.R. § 91.13(a). While we agree with Jackson that the controller violated ATC's published (if widely flouted) radio guidelines, we conclude that neither the controller's nor the first officer's errors excuse Jackson's own breach of his duty to attentively monitor ATC communications. We also conclude that the finding of a section 91.13(a) violation must be upheld as "derivative" of the section 91.123(a) violation. Accordingly we deny the petition for review.

I.

The material facts, as established before the ALJ, are largely undisputed.

On February 13, 1993 Jackson was pilot in command of American Airlines Flight 1206 from New York City to Toronto. On this leg of the journey First Officer Roger Ellison

---

1. Section 91.123(a) provides in relevant part: "When an [Air Traffic Control] clearance has been obtained, no pilot in command may deviate from that clearance unless an amended clearance is obtained, an emergency exists, or the deviation is in response to a traffic alert and collision avoidance system resolution advisory." 14 C.F.R. § 91.123(a).

2. Section 91.13(a) provides:

(a) Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

14 C.F.R. § 91.13.

was the "flying pilot" and Jackson was the "nonflying pilot" with primary responsibility for monitoring radio communications.

Upon departure from LaGuardia Airport in New York, the aircraft was cleared by Air Traffic Control to "climb to 16,000 feet, fly to GAYEL intersection and contact New York Center." Exhibits to Appendix (App. Exh.) 126. This was not the clearance Jackson expected and as a result he and Ellison began searching through aeronautical charts to locate it.

While occupied with the charts, Jackson radioed New York Center as he had been instructed and received the following advisory from ATC: "American twelve zero six New York roger stand by for climb a traffic at five o'clock and eight miles northwest bound at one seven thousand a seven forty seven clear of traffic I'll have higher for you." App. Exh. 298. The ALJ found this message was a "clear and unambiguous" advisory that another aircraft was approaching at 17,000 feet. Jackson testified, however, that he "was quite busy at the time" and when he heard the words " 'clear,' and 'climb' and '17,000 feet,' " it was his "perception" that he "was cleared to climb to 17,000 feet." App. Exh. 129. Jackson further testified that he verified the new altitude clearance with Ellison and then transmitted the following response to the controller: "American 1206 cleared to one-seven-thousand feet." App. Exh. 130. Ellison corroborated Jackson's testimony regarding both his verification and his response. No such response can be heard on the ATC radio message recording but, instead, approximately nine seconds after the advisory there is a "click" perhaps followed by a short utterance. Michael Kurz, the air traffic controller on duty at the time,[3] testified that he heard a click immediately after the advisory was transmitted and interpreted the sound as an "acknowledgment" that the pilot "had heard the traffic call." App. Exh. 18, 23–24. Although Kurz, FAA Aviation Safety Inspector Theodore Secola and Jackson's expert witness, American Air-

lines air traffic control coordinator Samuel Smith, all testified that some pilots use a simple click or "roger" to acknowledge receipt of a transmission, Jackson stated unequivocally that it was his "day-in/day-out practice to read back all clearances" and that "no pilot will leave an altitude to a new assigned altitude without reading back the clearance." App. Exh. 134–35. He offered the following explanation for the lack of response on the recording:

> [T]here's a lot of reasons this couldn't come through. It is an imperfect system, our radio system, you know that. Mr. Secola knows that. All of our people know that. My finger could have slipped off the button. The trans—the receiver at the ATC center may not have received it. I don't know what happened.

App. Exh. at 156–57. Smith similarly testified that "[t]here are many things that cause transmissions not to be heard. I mean you can, you can go down a list. The radio not working properly, the mike not working properly, or whatever." App. Exh. 210.

As a result of the pilots' misinterpretation, their aircraft ascended ultimately to 16,900 feet which, as the FAA asserted and the ALJ agreed, resulted in "a potential danger . . . caused by the loss of separation between the two aircraft potential danger due to the loss of separation with the other aircraft." App. 25. When the controller observed the aircraft's ascent, he transmitted instructions to "maintain" the previously cleared 16,000-foot altitude and Ellison and Jackson immediately complied.

On June 16, 1994, the FAA issued an order suspending Jackson's pilot certificate for 90 days based on his violation of 14 C.F.R. §§ 91.123(a) and 91.13(a). Jackson appealed the suspension and on September 28, 1994, after a full hearing, the ALJ issued his oral decision affirming the FAA's finding of both violations but imposing no sanction because Jackson had filed a timely report of the incident in accordance with the Aviation

3. At the time of the incident Kurz was supervis-

ing a trainee, Michael Langguth, who actually

Safety Reporting Program.[4] Jackson appealed the ALJ's decision to the NTSB which, by opinion and order dated July 18, 1995, affirmed the ALJ. By order dated March 19, 1996 the NTSB denied Jackson's motion for reconsideration. Jackson petitions for review of the Board's decisions.

## II.

Jackson offers three grounds for overturning the NTSB's decisions. We find none of them persuasive.

■ First, Jackson contends that his misinterpretation of the advisory should be excused under NTSB precedent holding that "even if a deviation from a clearance is initiated by an inadvertent mistake on the pilot's part, that mistake will be excused and no violation will be found if, after the mistake, the pilot takes actions that, but for ATC, would have exposed the error and allowed for it to be corrected." *Hinson v. Atkins & Richards*, NTSB Order EA–4078, 1994 WL 49589, *2 (1994) (citing *Del Balzo v. Frohmuth & Dworak*, NTSB Order EA–3816, 1993 WL 75479 (1993)). In denying reconsideration in *Atkins*, however, the Board explained: "In our view, this decision emphasizes the importance to be placed on readbacks, and only reflects our concern that, as we noted recently in *Administrator v. Swafford and Coleman*, NTSB Order No. EA–4117 at 7 (1994), '[a] readback would be

futile if the controller who is receiving it fails to listen carefully and assure that it is consistent with his instruction.'" 1994 WL 238999 at *1 (quoting *Swafford* at 7).[5] Consistent with that characterization, the Board reasonably concluded here that "the record in this case does not support a finding that respondent took appropriate action to expose his error" because "even assuming that respondent attempted a complete read back, we think the most favorable inference that can be drawn from this record is that it was not heard by FAA because, as respondent himself suggested, he failed to properly depress the microphone button." App. 41–42.[6]

■ We nevertheless agree with Jackson that Kurz acted improperly when he accepted the click as acknowledgment of the advisory. Guideline 2–72 in the ATC Handbook directs air traffic controllers as follows: "When issuing clearances, instructions, or information, ensure acknowledgment by the pilot." While the same guideline authorizes pilots to "acknowledge clearances, instructions, or other information by using 'Wilco,' 'Roger,' 'Affirmative,' or other words or remarks," it nowhere sanctions use or acceptance of a click to acknowledge any sort of communication.[7] Further, Guideline 4–31(b) in the Airman's Information Manual states in part: "It is essential ... that pilots acknowledge each radio communication with ATC by using the appropriate aircraft call sign."

4. "The [Aviation Safety Reporting Program] allows pilots who timely file an incident report with NASA, to escape any certificate suspension stemming from that incident, provided that, among other things, the violation was inadvertent and not deliberate. See FAA Advisory Circular, AC No. 00–46C ¶ 9(c)(1) (Feb. 4, 1985)." *Richards v. Halbert*, NTSB Order No. EA–3628, 1992 WL 187824, *2 (1992).

5. In *Frohmuth*, the Board emphasized:
We do not by any means intend that our decision here affirming the law judge be read to minimize the importance of careful attention to tower transmissions, or to suggest that pilots will, as a general rule, not be held accountable when they mistakenly believe that a particular clearance has been given them.
NTSB Order EA–3816, 1993 WL 75479 at *2.

6. The Board observed that "[n]o other plausible explanation for ATC's non-receipt of the read-

back was offered," App. 42, noting that "[t]here is no squelch or squeal, which would indicate a 'blocked' transmission due to two or more aircraft transmitting at once," App. 36 n.6, and "[t]here was no evidence ... of an equipment malfunction," App. 37.

7. Kurz repeatedly described what he heard as a simple "click." See App. Exh. 17–18 ("It was, I know it says 'unintelligible,' it was like a click. You can't even say 'unintelligible' in the amount of time you heard it. I thought he just clicked to me, like clicked the microphone."); 24 ("That was just like a click. It sounds like a click to me...."). Only once,—and belatedly—did he suggest "or maybe it was a quick Roger." App. Exh. 24. And in fact the NTSB expressly found: "The only audible response is the click of a microphone, and what sounds like a very short (unintelligible) word or portion of a word." App. 36.

There was no call sign or any other craft identification in the brief transmission received by ATC. Kurz testified that he merely "assumed" it was from Flight 1206 because "we talked directly to the plane and had a response right away to our communication with the plane." App. Exh. 45–46. Such an assumption was not only unwarranted but potentially dangerous as well.

Even more disturbing than ATC's dereliction here is NTSB's reaction to it. The Board conceded below that transmission and acceptance of a "click" in response to an advisory violates both Guideline 2–72 and Guideline 4–31(b). *See* App. 42–43. Yet at the same time, the Board premised its decision to affirm in part on its view that the controller acted not unreasonably when he accepted the anonymous click as a valid acknowledgment. *See* App. 42. ("Nor can we agree that the controller's acceptance of a microphone click or quick 'roger' as an acknowledgment of his advisory was improper to an extent that would excuse this violation. The preponderance of the evidence indicates that abbreviated acknowledgments of this sort are often used by pilots, and accepted by ATC...."). On reconsideration the Board went even further. While stopping short of "endorsing" the practice, it "recognize(d) that there was nothing aberrant in the controller's handling of the matter, given what the record in this case suggests is a prevailing industry custom." App. 92–93 n.1.[8] The Board's apparent acceptance of a practice that disregards the FAA's published guidelines—and that can so readily lead, as here, to a potentially hazardous situation—is incomprehensible and indefensible.

■ But, returning to the narrow issues before us today, we next reject Jackson's argument that the violations should be vacated because he reasonably relied on Ellison's identical misinterpretation of the advisory. In the three Board decisions Jackson cites in support,[9] it was the consulted pilot, not the pilot in command, who was the officer responsible for monitoring communications, while here, as we have stated, Jackson was himself the pilot with that responsibility. We therefore conclude that the NTSB properly held, based on its own precedent, that "the reliance defense is not available under these circumstances, since [Jackson] was the pilot whose original duty it was to handle and receive ATC radio communications." App. 43–44 (citing *Del Balzo v. De Back*, NTSB Order No. EA–3843 (1993)).[10]

■ Finally, Jackson argues that the Board erroneously found a separate, "nonderivative" violation of section 91.13(a). The Board's decision, however, characterizes the section 91.13(a) violation as "residual or derivative" based on the established section 91.123 violation. App. 45.[11] As such the

8. Throughout, the NTSB and the FAA have suggested some meaningful distinction between "courtesy" information such as the traffic advisory here and what they apparently consider more important transmissions such as clearances. Guideline 2–72, however, draws no such distinction and we see no reason why a matter important enough to bring to a pilot's attention during flight should not require a clear acknowledgment if for no other reason than to prevent an occurrence similar to this one.

9. *Administrator v. Coleman*, 3 N.T.S.B. 349 (1968), *Administrator v. Thomas*, 3 N.T.S.B. 349 (1977); *Administrator v. Leenerts*, 6 N.T.S.B. 725 (1988).

10. In *Administrator v. Buboltz*, NTSB Order No. EA–3907 (1993), the NTSB set out the criteria necessary for invoking a reliance defense generally:

We have held that, in general, the pilot in command is responsible for the overall safe operation of the aircraft and that he can avoid responsibility for a violation only if: *a particular task is the responsibility of another;* he has no independent obligation or ability to ascertain the information; and he has no reason to question the other's performance.

NTSB Order No. EA–3907, 1993 WL 226110, *2 (1993) (emphasis added) (citing *Administrator v. Fay and Takacs*, NTSB Order No. EA–3501 at 9 (1992)).

11. We summarily reject Jackson's repeated contention that there was no evidence or finding of "carelessness." As the Board noted, the ALJ "concluded that the misunderstanding occurred only because respondent and his first officer were 'wholly preoccupied' with their navigational charts" App. 38, and this is supported by the evidence. The Board itself concluded: "That the crew was required to consult aeronautical charts in order to comply with those instructions does not excuse them from continuing to listen closely to ATC transmissions." App. 40 (quoting *Administrator v. McIntosh & Spriggs*, NTSB Order No. EA–4174 at 5–6 (1994): "We have often empha-

section 91.13(a) violation is sustainable under Board precedent. *See Administrator v. Clark,* 7 N.T.S.B. 434, 436 (1990); *Administrator v. Buller,* 6 N.T.S.B. 31, 32 (1988).

For the preceding reasons, the petition for review is

*Denied.*

sized that the pilot-in-command of a passenger-carrying flight in air transportation is held to the highest degree of care. Consistent with this high

degree of care, it is not unreasonable to expect such a pilot to appropriately prioritize, and fulfill, competing duties.").